IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      Plaintiff,

v.                                                                                                                                                  No. 14-cr-3092 JAP

**CLAY O'BRIEN MANN,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

On January 23, 2015, Defendant Clay O'Brien Mann filed an OPPOSED MOTION TO DISMISS (Doc. No. 13) (Motion to Dismiss). Defendant argues that trying him on the Indictment (Doc. No. 2) would violate the Double Jeopardy Clause of the Fifth Amendment. Defendant also argues that the Government brought the Indictment in order to punish Defendant for exercising his legal rights. On March 11, 2015, the Government filed a RESPONSE (Doc. No. 18) (Response). The Court will deny the Motion to Dismiss.

## BACKGROUND

At around 4 A.M. on July 24, 2010, near Shiprock, New Mexico, Defendant allegedly shot Ames Jim, Mark Bolding, and Paula Nez with a .22 caliber rifle. *See* CRIMINAL COMPLAINT (No. 11-CR-1528 JAP, Doc. No. 1) at 2. Ames Jim died; Mark Bolding and Paula Nez were seriously injured. *Id.*

**I.  Defendant is Convicted of Various Crimes After a First Jury Trial.**

On June 7, 2011, a grand jury returned an eight-count Original Indictment (No. 11-CR-1528 JAP, Doc. No. 33) charging Defendant with: (Count 1) first degree murder for shooting Mr. Ames Jim; (Count 2) discharging a firearm during a crime of violence (the crime of violence

being first degree murder as charged in Count 1); (Count 3) assault with intent to do serious bodily injury for shooting Ms. Paula Nez; (Count 4) assault resulting in serious bodily injury for shooting Ms. Paula Nez; (Count 5) discharging a firearm during a crime of violence (the crime of violence being the assault charged in Count 4); (Count 6) assault with intent to do serious bodily injury for shooting Mr. Mark Bolding; (Count 7) assault resulting in serious bodily injury for shooting Mr. Mark Bolding; and (Count 8) discharging a firearm during a crime of violence (the crime of violence being assault resulting in serious bodily injury charged in Count 6).

Careful readers will note an error in Count 8 in the Original Indictment. Count 8 charged Defendant with discharging a firearm during an assault resulting in serious bodily injury and referenced Count 6 as the count charging the assault. But Count 6 charges Defendant with assault with a dangerous weapon *with the intent* to do serious bodily injury, not assault *resulting* in serious bodily injury. The Court, the Government, and Defendant failed to notice the mistake in Count 8.

The case proceeded to trial on the flawed Original Indictment. After closing statements, the jury entered deliberations and discovered the mistake in Count 8. The jury sent the Court a note asking whether Count 8 referred to Count 6 or Count 7. At a colloquy, the Government said the grand jury had intended for Count 8 to refer to the assault resulting in serious bodily injury charged in Count 7, and that Count 8's reference to Count 6 was the result of a typographical error. *See* TRANSCRIPT OF JURY TRIAL, DAY 5, No. 11-CR-1528 JAP, Doc. No. 125 (Transcript) at 5:20–6:7.

The Government argued that the Court should answer the jury's question by telling them that Count 8 referred to Count 7, not Count 6. Transcript at 3:17–18. The Government did not believe that the typo in Count 8 required Count 8 to be dismissed or a mistrial declared because

Count 8 still alleged the elements of the violation it charged. Transcript at 8:24–9:2. Defendant argued that the typo made Count 8 vague and incomprehensible, thereby violating Defendant's Fifth Amendment rights. Transcript at 6:12–19. The Court ultimately dismissed Count 8 without prejudice and ordered the jury to ignore Count 8 on the verdict forms. *See* ORDER (No. 11-CR-1528 JAP, Doc. No. 101).

The jury convicted Defendant on five of the remaining seven counts: (Count 1) involuntary manslaughter, a lesser included offense of first degree murder; (Count 2) discharging a firearm in relation to a crime of violence (the crime of violence being involuntary manslaughter); (Count 3) assault resulting in serious bodily injury for shooting Ms. Paula Nez; (Count 4) discharging a firearm in relation to a crime of violence (the crime of violence being assault resulting in serious bodily injury for shooting Ms. Paula Nez); and (Count 5) assault resulting in serious bodily injury for shooting Mr. Mark Bolding. REDACTED VERDICT AS TO COUNT 1 (No. 11-CR-1528 JAP, Doc. No. 117); REDACTED VERDICT AS TO COUNTS TWO, THREE, FOUR, FIVE, SIX, SEVEN AND EIGHT (No. 11-CR-1528 JAP, Doc. No. 118). The jury acquitted Defendant of Count 3—assaulting Ms. Paula Nez with intent to do serious bodily injury, and Count 6—assaulting Mark Bolding with intent to do serious bodily injury. In addition, the jury acquitted Defendant of first degree murder, second degree murder, and voluntary manslaughter as to the charge in Count 1. *Id.*[1]

## II. The Government Re-indicts Defendant; Defendant Moves to Dismiss the Indictment

On September 9, 2014, nearly fourteen months after the Court dismissed Count 8 of the

---

[1] The Court arrested judgment on Count 2 because Defendant's conviction of involuntary manslaughter did not qualify as a "crime of violence." *See* MEMORANDUM OPINION AND ORDER (No. 11-CR-1528 JAP, Doc. No. 143). The Court denied Defendant's motion to arrest judgment on Count 5. That decision is now being reviewed by the Tenth Circuit Court of Appeals.

Original Indictment without prejudice, a grand jury returned a one-count Indictment alleging Defendant "knowingly used, by discharging a firearm…during and in relation to…the assault resulting in serious bodily injury of John Doe, as determined by the jury in *United States v. Clay O'Brien Mann*, cause number 11-cr-01528-JAP…[i]n violation of 18 U.S.C. § 924(c)(1)(A)(iii)." INDICTMENT (Doc. No. 1) (Indictment).

Defendant filed a Motion to Dismiss arguing that (1) trying Defendant on the Indictment would violate Defendant's rights under the Double Jeopardy Clause of the Fifth Amendment; and (2) the Indictment creates a presumption of vindictive prosecution because it was returned more than 30 days after Count 8 was dismissed without prejudice, in violation of 18 U.S.C. § 3161(d)(1).

## DISCUSSION

I. **Defendant's Motion to Dismiss under the Double Jeopardy Clause of the Fifth Amendment**

   A. *Legal standard*

"No person shall…be subject for the same offense…twice put in jeopardy of life or limb…." U.S. Const. Amend. V. The Double Jeopardy Clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440 (1989). The parties do not dispute that Defendant was acquitted of some charges and convicted of others in the Original Indictment, and that this case is a "second prosecution" in the sense that it arises from the same transaction that gave rise to the offenses charged in the Original Indictment.

4

The parties disagree, however, over how broadly the Court should construe the phrase "same offense." The Government argues that *Blockburger v. United States*, 284 U.S. 299 (1932) is the exclusive test for determining whether the Court should dismiss the Indictment against Defendant. *Blockburger* held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one [i.e., whether the two charges are for the "same offense"] is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304. The *Blockburger* test is applied by looking to the elements of the statute alone, not the underlying offense conduct. *Schmuck v. United States*, 489 U.S. 705, 716–17 (1989).

Defendant argues that *Blockburger* only applies to multiple punishments for convictions arising in the same prosecution. Defendant argues that when, as here, the Government institutes a second prosecution arising from the same course of conduct, a different general rule applies. Specifically, Defendant contends that the Double Jeopardy Clause forbids a second prosecution when "the Government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Motion to Dismiss at 6 (quoting *Grady v. Corbin*, 495 U.S. 508, 521 (1990)). In other words, Defendant argues that even while *Blockburger* does not necessarily forbid charging Defendant with violating two statutes in a single prosecution based on a single act or transaction, the Double Jeopardy Clause prohibits the Government from prosecuting the same two crimes over the course of two prosecutions.

*United States v. Dixon*, 509 U.S. 688 (1993) explicitly rejected Defendant's view of the Double Jeopardy Clause analysis. *Dixon* overruled *Grady*'s 'necessary proof of the same facts' rule. *See* 509 U.S. at 704–09. *Dixon* established that whether or not two charges are the "same

5

offense" depends on the elements of the statutes or legislative intent, not whether the charges require proof of the same underlying offense conduct or form part of more than one prosecution. *Id.*; *see also Schmuck v. United States*, 489 U.S. 705, 716–17 (1989). In *Dixon*, the Supreme Court rejected the "theory of a 'successive prosecution' strand of the Double Jeopardy Clause that has a different meaning from its supposed 'successive punishment' strand." *Id.* at 704. The Court went on to state:

> We have often noted that the Clause serves the function of preventing both successive punishment and successive prosecution…, but there is *no* authority, except *Grady,* for the proposition that it has different meanings in the two contexts. That is perhaps because it is embarrassing to assert that the single term "same offence" (the words of the Fifth Amendment at issue here) has two different meanings—that what *is* the same offense is yet *not* the same offense…. The collateral-estoppel effect attributed to the Double Jeopardy Clause…may bar a later prosecution for a separate offense where the Government has *lost* an earlier prosecution involving the same facts. But this does not establish that the Government "must…bring its prosecutions…together." It is entirely free to bring them separately, and can win convictions in both.

*Id.* at 704–705 (emphasis original) (citations omitted).

    For the reasons above, the Court will review Defendant's Motion to Dismiss without any regard for whether the Indictment charges Defendant with a crime arising from the same transaction that gave rise to the Original Indictment. Instead, the Court will determine whether the elements of the criminal offenses charged in the Indictment and the Original Indictment each require proof of a fact that the other does not.

B.      *Whether a second prosecution of defendant arising from the same acts at issue in the first trial violates Defendant's rights under the Double Jeopardy Clause of the Fifth Amendment*

As mentioned above, the fact that the Indictment requires proof of conduct for which Defendant was already prosecuted in the Original Indictment is not in and of itself a violation of the Double Jeopardy Clause. But the Court must still decide whether the Indictment charges Defendant with the "same offense" as the offenses charged in the Original Indictment.

The Indictment in this case charges Defendant with "knowingly…discharging a firearm…during and in relation to…the assault resulting in serious bodily injury…as determined by the jury" in Defendant's first trial "[i]n violation of 18 U.S.C. § 924(c)(1)(A)(iii)." *See* Doc. No. 2. There are two types of charges in the Original Indictment that may potentially be the "same offense" as the § 924(c) charge in the Indictment. First, there are Counts 2, 5, and 8 of the Original Indictment, which quite literally charge Defendant with the same offense: violating 18 U.S.C. § 924(c)(1)(A)(iii). *See* No. 11-cr-1528, Doc. No. 33.

The second type is composed of Counts 1 (murder), 3 (assault with a dangerous weapon with intent to cause bodily injury), 4 (assault resulting in serious bodily injury), 6 (assault with a dangerous weapon with intent to do bodily injury), and 7 (assault resulting in serious bodily injury) of the Original Indictment. Each of these counts is a predicate "crime of violence" necessary to support a conviction for the § 924(c) charges in Counts 2, 5, and 8.

Counts 1, 2, 4, and 5 of the Original Indictment can be removed from the Court's analysis. Counts 1 and 4 were the predicate crimes of violence against Ames Jim and Paula Nez, respectively. These counts resulted from "successive impulses" such that "even though all unite in swelling a common stream of action, separate indictments lie." *Blockburger*, 284 U.S. at 302

(quoting Wharton's Criminal Law § 34 (11th ed. 1912)). For the same reason, Counts 1 and 2 served as separate predicates underlying the § 924(c) violations in Counts 4 and 5. *Id.* This leaves Count 8 as the remaining § 924(c) charge in the first category and Counts 3, 6, and 7 as the possible predicate crimes of violence.

> i. <u>Whether the Indictment charges Defendant with the "same offense" as Count 8 of the Original Indictment</u>

The Government argues that the Indictment does not charge Defendant with the "same offense" as Count 8 because the two charges require proof of additional facts. The Government says that "the present indictment requires the Government to prove that [Defendant] (1) discharged a firearm (2) during and in relation to (3) a crime of violence, that is…the assault resulting in serious bodily injury of Mark Bolding." Response at 9. The Government asserts that the elements of Count 8 in the Original Indictment, on the other hand, "required the Government to prove that [Defendant] (1) assaulted Mark Bolding, (2) the assault was with a dangerous weapon with intent to cause serious bodily injury, (3) the defendant was an Indian, and (4) the incident took place in Indian Country." *Id.*

The Government's argument is impossible to square with the text of Count 8, which states that the predicate crime of violence is the "assault *resulting in* serious bodily injury…." No. 11-cr-1528, Doc. No. 33 at 4 (emphasis added). To be sure, Count 8 references Count 6 (the assault with intent to cause bodily injury count). But while it is possible to excuse Count 8's reference to Count 6 as the result of a typographical error, it is not so easy to explain away the phrase "resulting in" as the fault of careless fingers. Indeed, this was the government's position at trial when the mistake was first revealed. Bafflingly, the Government now takes the opposite position.

Even if the Government had consistently maintained that Count 8 referred to Count 6 and not Count 7, it would make less sense for the Government to seek a § 924(c)(1)(A)(iii) conviction based on Count 6 and not Count 7. Count 6 required the Government to prove Defendant assaulted Mark Bolding with a dangerous weapon, with the intent to cause bodily injury, and without just cause. *See* No. 11-cr-1528, Doc. No. 33 at 3; 18 U.S.C. § 113(a)(3). Count 7 only required the Government to prove Defendant "assault[ed] Mark Bolding" and that the assault "result[ed] in serious bodily injury." No. 11-cr-1528, Doc. No. 33 at 3; 18 U.S.C. § 113(a)(6). The jury found that the Government had met its burden on one, and not the other. Thus, if the Court were to agree with the Government's position, Defendant would have been entitled to a verdict of acquittal on Count 8, not merely dismissal without prejudice. *Brown v. Ohio*, 432 U.S. 161, 167–68 (1977).

Given the text of the Indictment, the Government's position at the first trial, the jury's verdicts of acquittal on Counts 3 and 6, and the fact that Defendant did not contest the elements of Count 7 at the first trial, it is impossible not to conclude that for the purposes of analyzing Defendant's Double Jeopardy claim, Count 8's "crime of violence" element was composed of an underlying assault resulting in serious bodily injury offense. It follows, then, that the Indictment charges the "same offense" as Count 8 in the Original Indictment under *Blockburger*.

But this does not end the analysis. Jeopardy "attaches" when a jury is sworn, *Crist v. Bretz*, 437 U.S. 28, 36 (1978), but it does not "terminate" unless the jury acquits or convicts, at least in the absence of "judicial or prosecutorial impropriety designed to avoid an acquittal." *United States v. Jorn*, 400 U.S. 470, 485 n. 9 (1971) (plurality opinion) (citation omitted). Therefore, the Court must determine whether the Court's dismissal without prejudice of Count 8 terminated Defendant's first exposure to jeopardy.

If the Court had dismissed the entire indictment without prejudice after a jury was sworn, a second indictment without the typographical error and a new trial on that indictment would not violate the Double Jeopardy Clause, unless the Original Indictment had been dismissed in order to avoid a likely acquittal, *Lee v. United States*, 432 U.S. 23, 30–31 (1977), or out of a perverse effort to make the Defendant "run the gauntlet a second time." *Ashe v. Swenson*, 397 U.S. 436, 446 (1970). Even if the Court had denied Defendant's motion to dismiss Count 8 and the jury went on to convict Defendant on that Count, a new trial would not be barred if an appellate court found this to be a legal error and reversed the conviction. *United States v. Ball*, 163 U.S. 662, 672 (1896).

This leaves the question of whether the Court dismissed Count 8 with the Government's acquiescence in order to avoid a likely acquittal. If, as the Government now maintains, Count 8 intended to incorporate Count 6, the answer seems to be yes. Since the jury acquitted Defendant on Count 6, dismissing a § 924(c)(1)(A)(iii) charge based on Count 6 before the jury could reach a verdict would be strong evidence that the charge was dismissed in order to avoid an acquittal.

But two facts drive against this conclusion. First, the text of the Original Indictment, the Government's position at the earlier trial, and the lower barrier to proving Count 7 strongly indicate that Count 8 was intended to refer to Count 7. Second, by reaching a verdict of acquittal on Count 6, the jury forever precluded the Government from seeking to re-try Defendant on a § 924(c)(1)(A)(iii) charge based on that offense predicate. *Yeager v. United States*, 557 U.S. 110, 120 (2009). Since the Government now seeks to convict Defendant of violating § 924(c)(1)(A)(iii) based on a crime Defendant was convicted of at the first trial, the Indictment in this case does not implicate any concern that the Government is seeking to institute successive

prosecutions in order to tinker with its trial strategy in order to be more assured of a guilty verdict or because it sought to avoid a likely acquittal at the first trial.

> ii. Whether the Indictment charges Defendant with the "same offense" as Counts 3, 6, and 7 of the Original Indictment

Defendant argues that because the jury returned guilty verdicts on the two counts in the Original Indictment charging Defendant with assault resulting in serious bodily injury (that is, Counts 4 and 7),[2] subjecting Defendant to a second trial on charges arising from the same assault causing serious bodily injury puts Defendant twice in jeopardy for the same offense. *See* Motion to Dismiss at 8. Under *Blockburger*'s strict elements test for whether two "distinct statutory provisions" are really the same offense, the answer would be straightforward. The Indictment incorporates 18 U.S.C. § 113(a)(6) in its entirety, and the two statutes do not each require proof of a different fact. Therefore, the Indictment charges the "same offense" as Count 8 of the Original Indictment under the *Blockburger* analysis.

But the Double Jeopardy Clause does not forbid multiple punishments (and, under *Dixon*, successive prosecutions) for statutes that fail *Blockburger*'s same elements test in all cases. Even when two statutes fail *Blockburger*'s "same elements" test, multiple punishments are permitted if Congress clearly intended to impose them. *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). And in this case, Congress clearly intended § 924(c) to impose separate punishments for both the violation of § 924(c) and the underlying violent crime predicate. Title 18 U.S.C. § 924(c)(1)(A)(iii) states, "[A]ny person who, during and in relation to any crime of violence, …uses or carries a firearm [and the firearm is discharged]…shall, *in addition to the punishment*

---

[2] Count 6 is irrelevant to the analysis because the jury acquitted Defendant on that count, and Count 3 can be eliminated because it furnished the basis for Defendant's conviction on Count 4.

*provided for such crime of violence*…be sentenced to a term of imprisonment of not less than 10 years." (emphasis added).

"Where, as here…, [Congress] specifically authorizes cumulative punishment under two statutes…, the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Hunter*, 459 U.S. at 368–69. As the Court has shown above, this rule applies to Defendant's charges in Count 8 of the Original Indictment and his current charge in the Indictment in this case.

But *Hunter* raises an additional wrinkle: what to make of the fact that Defendant's cumulative criminal liability will not arise from "a *single* trial[,]" but two? *Id.* at 69 (emphasis added). Two lines of case law are relevant to the Court's inquiry. The first begins with *Garrett v. United States*, 471 U.S. 773 (1985). In that case, the defendant was prosecuted for a "continuing criminal enterprise" (CCE) in violation of 21 U.S.C. § 848. 471 U.S. at 775. The Government had used facts underlying a prior conviction to prove a predicate offense of the CCE violation. *Id.*

In *Garrett*, the defendant pleaded guilty before a Federal district judge in Washington to one count of importing marijuana in violation of 21 U.S.C. §§ 952, 960(a)(1), 960(b)(2) and 18 U.S.C. § 2. *Garrett*, 471 U.S. at 776. The defendant was then indicted on the CCE offense in the Northern District of Florida. *Id.* The Florida indictment went to trial. *Id.* At trial, the United States offered evidence of the defendant's drug trafficking activities, including the marijuana importation admitted in Defendant's guilty plea in Washington. *Id.* The trial court instructed the jury that the substantive counts of the Florida indictment as well as the offense conduct in Washington, if proven beyond a reasonable doubt, qualified as predicate CCE offenses. *Id.*

The defendant argued that because the predicate offense he had already pleaded guilty to in Washington was a lesser included offense of the CCE charge, a successive CCE prosecution violated *Brown v. Ohio*, 432 U.S. 161 (1977).[3] In part one of its opinion, the Court found that because there was clear evidence Congress intended to impose cumulative punishments for CCE violations over and above the punishments arising from the CCE predicates, *Blockburger* did not preclude cumulative punishments, even though under *Blockburger*'s "elements" test the CCE and marijuana importation crimes did not each require proof of different facts. *Garrett*, 471 U.S. at 781–85.

In part two, the Court rejected the defendant's argument that even if Congress intended to allow cumulative punishments for the CCE and underlying predicate offenses, those cumulative punishments could only be imposed after a *single* prosecution. *Id.* at 788–792. The Court rejected Defendant's argument with a rationale based in part on Congress's intent to impose cumulative punishments for CCE offenses and the fact that the Florida CCE charges encompassed a criminal enterprise that continued after the defendant's guilty plea. *Id.* at 788. Finally, the Court made a policy argument against Defendant's proposed resolution of the case: if a second CCE prosecution is barred when a defendant is convicted on an underlying predicate offense, then the Government would be forced to either hold back charges (and allow Defendant to continue engaging in criminal conduct) until it could obtain a CCE indictment or obtain a CCE indictment before the criminal enterprise itself terminated. *Id.* at 789–90.

The Tenth Circuit has read *Garrett* to set out a two-step analysis of claims that the Double Jeopardy Clause forbids successive prosecutions. First, the reviewing court must determine whether Congress "intended the violations of the two different statutory provisions to

---

[3] *Brown* held that *Blockburger* applies not only to multiple offenses in the same prosecution, but also to successive prosecutions arising from the same criminal episode. 432 U.S. at 166–67.

be separately prosecutable offenses." *United States v. Edgmon*, 952 F.2d 1206, 1213 (10th Cir. 1991). If such an intent is evident, then the court determines whether the charged offenses are the "same" based on the ordinary meaning of that term and the "actual crimes charged…." *Id.* at 1214 (citing *Garrett*, 471 U.S. at 786).

As the Court has already concluded, Congress clearly intended 18 U.S.C. § 924(c) to impose a punishment for conviction cumulative to a punishment for the predicate offense. But it is equally clear that the 'actual crime charged' in the Indictment refers to the "same" predicate offense as the offense conduct charged in Counts 6 & 7 of the Original Indictment: shooting Mark Bolding with a .22 caliber rifle. Therefore, under *Garrett*'s second step, the Double Jeopardy Clause would appear to forbid Defendant's reprosecution and to necessitate dismissal of the Indictment.

But this result would have its own negative policy implications. It would encourage defendants to "hold back" claims of error until after a jury is sworn in order to seek out a Double Jeopardy windfall. True, the Government drafts its indictments, and there is something to be said for holding the Government responsible for its own errors. But insofar as these considerations conflict, the Rules of Criminal Procedure prefer the orderly administration of justice to holding the Government responsible to the maximum extent possible for even the most technical errors. *See* Fed. R. Crim. P. 12(b)(3)(B) (motion alleging defect in an indictment or information "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits").

Moreover, as noted previously, reading *Garrett* to prohibit successive prosecutions based on the same underlying facts would create a direct conflict with *Dixon*, which explicitly rejected any distinction between multiple punishments and successive prosecutions. Justice Scalia,

writing for the Court's majority, stated that "there is no authority…for the proposition that [the Double Jeopardy Clause] has different meanings" with respect to successive prosecutions as opposed to multiple punishments. *United States v. Dixon*, 509 U.S. 688, 705 (1993). "That is perhaps because it is embarrassing to assert that the single term "same offence" (the words of the Fifth Amendment at issue here) has two different meanings—that what is the same offense is yet not the same offense." *Id.*

To be sure, *Dixon* should not be read to allow any number of successive prosecutions as long as *Blockburger*'s "elements" test is satisfied or Congress intended multiple punishments. *See* Response at 11. Such a reading would allow the Government, "with all its resources and power… [to] make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–188 (1957).

But while the Double Jeopardy Clause should apply even where Congress intended to allow multiple punishments (and hence, under *Dixon*, successive prosecutions), Defendant has failed to show why it must apply in this case. The mistake in the Original Indictment was clear from the beginning of the prosecution; Defendant could have moved to dismiss Count 8 of the Original Indictment for lack of specificity (indeed, Fed. R. Crim. P. 12 requires as much), but did not.[4] And while the Government bears no small amount of blame for the initial error in the Original Indictment, Defendant cannot be allowed to benefit from his own negligent failure to bring the defect to the Court's attention before trial.

---

[4] Defendant's attorney admitted as much in a colloquy on Count 8: "The defect , Your Honor, is mine, and I apologize to the Court…. Certainly to the jury . The jury has exhibited a level of diligence which I have lacked in this case, and I apologize to the Court for putting the Court in this position." Transcript at 4:11–15.

The Court concludes that even though the Indictment charges Defendant with a greater offense after he was convicted for a lesser included offense charged in the Original Indictment, Double Jeopardy does not preclude reprosecuting Defendant for that charge. Ordinarily, the Government would be precluded from instituting successive prosecutions for a greater offense after conviction for a lesser offense. *Brown v. Ohio*, 432 U.S. 161, 166 (1977). But *Dixon* held that the Double Jeopardy Clause inquiry is no different in the case of successive prosecutions than it is in the case of multiple punishments. Thus, under *Dixon*, when Congress intends to impose multiple punishments, it also intends to allow successive prosecutions.

## II.     Defendant's Motion to Dismiss for Prosecutorial Vindictiveness

A.     *Legal standard*

Defendant argues that even if the Government is not prohibited by the Double Jeopardy Clause from instituting a second prosecution of Defendant, the Indictment should nonetheless be dismissed because it is the result of prosecutorial vindictiveness in violation of the Fifth Amendment's Due Process Clause. The Due Process Clause of the Fifth Amendment prohibits the Government from punishing a criminal defendant for exercising his constitutional or statutory rights. *United States v. Goodwin*, 457 U.S. 368, 372 (1982). In other words, "punish[ing] a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). Defendant argues that the Government's decision to obtain an indictment charging him with the same crime as that alleged in Count 8 of the Original Indictment was the result of prosecutorial vindictiveness. The Government responds that Defendant has failed to put forward any evidence of prosecutorial vindictiveness or point out any circumstances that would give rise to a presumption of vindictive prosecution. Response at 17.

B. *Whether the Government's fourteen-month delay in obtaining the Indictment violated the Speedy Trial Act, and if so, whether the violation creates a presumption of prosecutorial vindictiveness*

Defendant's prosecutorial vindictiveness argument proceeds in two steps. First, Defendant argues that the Government's fourteen-month delay in obtaining the Indictment violates 18 U.S.C. § 3161(b). Second, Defendant argues that the Government's violation of the Speedy Trial Act in and of itself indicates "a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." Motion to Dismiss at 11 (citing *United States v. Goodwin*, 457 U.S. 368, 374 (1982); *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969)).

    i. <u>Whether the fourteen-month delay in obtaining the Indictment violated the Speedy Trial Act</u>

Title 18 U.S.C. § 3161(b) provides: "Any…indictment…shall be filed within thirty days from the date on which [the charged] individual was arrested or served with a summons in connection with such charges."

Title 18 U.S.C. § 3161(d)(1) provides:

> If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

Defendant argues that 18 U.S.C. § 3161(d)(1) "provide[s] that, when a defendant is arrested, and subsequently indicted, 'the provisions of [18 U.S.C. § 3161](b)…shall (apply to)

17

such subsequent…indictment,' *id.* § 3161(d)(1), thus rendering the indictment untimely unless filed within thirty days of the original arrest." *United States v. Krynicki*, 689 F.2d 289, 293 (1st Cir. 1982); *see also* Motion to Dismiss at 12.

The problem with Defendant's argument is that it would render § 3161(d)(1) superfluous. As the Ninth Circuit Court of Appeals, in *United States v. Barraza-Lopez*, 659 F.3d 1216 (2011) stated:

> Section 3161(b) already establishes the general principle that an indictment must be returned within 30 days of the arrest. If § 3161(d)(1) merely confirmed that an indictment filed after dismissal of charges previously alleged in a complaint must be filed within 30 days of the initial arrest, it would do no more than restate the general rule of § 3161(b).

659 F.3d at 1220. As the court went on to note, "[i]t is a well-established principle of statutory construction that legislative enactments should not be construed to render their provisions mere surplusage." *Id.* (quotation omitted).

Second, Under Defendant's reading of 18 U.S.C. § 3161(d)(1), the Government would be required to obtain an error-free indictment within thirty days of an arrest. Otherwise, any successful motion by the defendant that resulted in dismissal of the indictment without prejudice would create an independent speedy trial hurdle that would prevent the Government from re-indicting the defendant at all. Where, as here, the defendant moves to dismiss an indictment because of a technical flaw more than 30 days after his arrest, the government would be barred from reprosecuting the defendant for reasons wholly unrelated to the defendant's motion to dismiss.

Third, Defendant's reading of 18 U.S.C. § 3161(d)(1) creates an unexplainable asymmetry . If the Government had noticed the error in Count 8 and dismissed the entire

Original Indictment without prejudice, 18 U.S.C. § 3161(h)(5) would toll the Speedy Trial Act's timeline for any period of time that elapsed from the dismissal and the re-filing of charges. *See Barraza-Lopez*, 659 F.3d at 1220 n.5. Under Defendant's argument, 18 U.S.C. § 3161(d)(1) would create an additional bar to re-indictment based solely on the identity of the party who moved to dismiss the indictment.

It is perhaps disconcerting that the Government waited fourteen months before deciding to re-indict Defendant on the charge that this Court dismissed at Defendant's first trial. But during these fourteen months, Defendant has been serving his sentence for the charges for which he was convicted at the first trial. *See* Judgment, No. 11-cr-1528, Doc. No. 148 at 3 (imposing a 171-month term of imprisonment for Defendant's convictions on Counts 1, 4, 5, and 7 in the Original Indictment). In other words, during this period of time Defendant was not arrested or being held prisoner "in connection with" the Indictment. 18 U.S.C. § 3161(b).

For these reasons, the Court concludes that the Government did not violate the Speedy Trial Act by waiting fourteen months to re-indict Defendant on the charge in Count 8 of the Original Indictment. Since Defendant's prosecutorial vindictiveness argument is premised entirely on the argument that the Government violated the Speedy Trial Act, the Court must deny Defendant's motion to dismiss the Indictment on grounds of prosecutorial vindictiveness.

## CONCLUSION

Defendant's reprosecution for Count 8 in the Original Indictment does not violate the Double Jeopardy Clause of the Fifth Amendment. Nor does it violate the Speedy Trial Act or create a realistic likelihood of prosecutorial vindictiveness.

IT IS ORDERED THAT Defendant's Motion to Dismiss is DENIED.

*/s/ James A. Parker*

SENIOR UNITED STATES DISTRICT JUDGE